**UNITED STATES of America, Appellant,**

v.

**Henry KEARNS et al.**

**No. 77–1841.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 14, 1978.

Decided Nov. 13, 1978.

As Amended Nov. 13, 1978.

---

Mark H. Gallant, Atty., Dept. of Justice, Washington, D. C.; with whom Earl J. Silbert, U. S. Atty., Barbara Allen Babcock, Asst. Atty. Gen., Leonard Schaitman, Atty., Dept. of Justice, Washington, D. C., were on brief, for appellant.

A. Raymond Randolph, Jr., Washington, D. C., with whom James E. Sharp and N. Richard Janis, Washington, D. C., were on the brief, for appellee, Kearns.

Brian P. Gettings, Arlington, Va., with whom Harvey B. Cohen, Arlington, Va., was on the brief, for appellee, Bostwick.

Before WRIGHT, Chief Judge, and BAZELON and MacKINNON, Circuit Judges.

Opinion for the Court filed by BAZELON, Circuit Judge.

BAZELON, Circuit Judge:

The Government brought this action for breach of fiduciary duty against Henry J. Kearns and Donald Bostwick, formerly president and executive vice president, respectively, of the Export-Import Bank of the United States (Eximbank),[1] to recover any profits from the sale of personal stock holdings to a company having extensive dealings with Eximbank. Because the Government did not allege that it had suffered a direct injury, the district court dismissed the complaint for failure to state a claim on which relief could be granted.[2] We reverse.

### I.

■ On this appeal, we are bound to view the facts alleged in the complaint most favorably to the plaintiff.[3] When Kearns was appointed president of Eximbank in 1969, he was engaged in international trading ventures through Kearns International. One of his ventures was Siam Kraft Paper Co., Ltd., (Siam Kraft), a pulp and paper firm in Thailand. Siam Kraft borrowed $14 million from Eximbank before Kearns's appointment, and this obligation remained outstanding throughout his tenure at the bank. During Senate hearings on his confirmation, Kearns agreed to resign his directorship of Siam Kraft and to place in a "blind trust" 100,000 shares in the firm, which he had been unable to sell. Kearns took office at Eximbank on March 20, 1969, and served as president and chairman of the board until October, 1973.

In December, 1972, Kearns's trustee sold the Siam Kraft stock for $5 a share to Mitsui & Co. (USA) (Mitsui-USA), a subsidiary of Mitsui & Co., (Japan) Ltd., (Mitsui-Japan), which has extensive dealings with Eximbank. The complaint alleges that Kearns personally solicited Mitsui-USA as a buyer, and that the sale price was greatly inflated, since at the time of sale the stock was traded on the Bangkok Stock Exchange for $1.75 a share.[4] The result, the Government. charges, was a serious breach of Kearns's fiduciary duty to Eximbank.[5] Bostwick, previously employed at Siam Kraft, served at Eximbank from May 1969 through September 1973. The Government alleges that Bostwick knowingly permitted Kearns to include Bostwick's 8,000 Siam Kraft shares in the Mitsui-USA deal, and similarly violated his fiduciary duty to the bank.

### II.

■ Noting that the Government has not proceeded against them on criminal charges, Kearns and Bostwick insist that

---

1. The bank's function is "to aid in financing and to facilitate exports and imports and the exchange of commodities between the United States . . . and any foreign country . . . ." 12 U.S.C. § 635 (1976).

2. Fed.R.Civ.P. 12(b)(6).

3. *Jenkins v. McKeithen,* 395 U.S. 411, 421–22, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1357, at 594–96 (1969).

4. Appellees contest this allegation, claiming that the Bangkok Stock Exchange is an unreliable financial market and the Siam Kraft shares were worth at least as much as Mitsui-USA paid for them. This, of course, is an issue of fact to be determined at trial. For the purposes of this appeal, we must take the Government's characterization of the facts as true.

5. The Government's complaint in this case also claimed that appellees had violated implied terms of their contracts of employment, and that the government could proceed on a theory of unjust enrichment. J.A. 6–10. On this appeal, the Government does not press those alternative approaches to this action, so we do not address them.

the Government's case fails because there is no statute authorizing this civil action. They emphasize the limitations on the development of the common law in federal courts as epitomized by *Erie R. Co. v. Tompkins*.[6] Should this court permit the Government to seek a common law remedy for breach of fiduciary duty, appellees argue, it would herald a return to the "freewheeling" days before *Erie*.[7]

We find this contention without merit. Despite misreadings of Justice Brandeis's position in *Erie*, it is by now accepted that federal common law provides remedies in many situations.[8] Two general classes of cases can be identified where federal common law remedies are available. The first involves implementation of federal constitutional or statutory policies, as in labor law[9] or regulation of interstate waters.[10] The second concerns the Government as a legal entity, for example in cases involving trespass on government property,[11] handling of the Government's commercial paper.[12] Government contracts,[13] and tort claims.[14] The instant case falls into this second category. As Justice Grier observed in *Cotton v. United States*, 52 U.S. (11 How.) 229, 231, 13 L.Ed. 675 (1850), "It would present a strange anomaly, indeed, if, having the power to make contracts and hold property as other persons, natural or artificial, [public agencies] were not entitled to the same remedies for their protection." We hold that common law protections against breach of fiduciary duty extend to the principal-agent relationship presented here.[15]

We also reject appellee's argument that since Congress enacted criminal statutes covering bribery and conflicts of interest without creating a civil remedy, we must infer that Congress chose not to allow civil actions like this one. There is a paucity of evidence to support the view that Congress intended to strip the Government of its civil remedy in this situation. We agree with the Court of Claims that "[t]he mere existence of statutes establishing brib-

6. 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938) ("[t]here is no federal general common law").

7. *Wheeldin v. Wheeler*, 373 U.S. 647, 651, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1953).

8. *See* Friendly, *In Praise of Erie—And of the New Federal Common Law*, 39 N.Y.U.L.Rev. 383 (1964).

9. *E. g.*, *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 456–57, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

10. *E. g.*, *Illinois v. City of Milwaukee*, 406 U.S. 91, 99–100, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972).

11. *E. g.*, *Cotton v. United States*, 52 U.S. (11 How.) 228, 231, 13 L.Ed. 675 (1850).

12. *E. g.*, *Clearfield Trust Co. v. United States*, 318 U.S. 363, 366, 63 S.Ct. 573, 575, 87 L.Ed. 838 (1943) ("rights and duties of the United States on commercial paper which it issues are governed by federal rather than local law"); *see also Ashland Oil, Inc. v. Phillips Petroleum Co.*, 554 F.2d 381, 391 (10th Cir. 1977) (en banc) ("[W]hen the United States seeks to litigate or seek a remedy arising from transactions it has entered into the ordinary commercial world to carry out its program, . . . federal law may be applied").

13. *E. g.*, *Priebe & Sons, Inc. v. United States*, 332 U.S. 407, 68 S.Ct. 123, 92 L.Ed. 32 (1947); *United States v. Standard Rice Co.*, 323 U.S. 106 (1944).

14. *E. g.*, *United States v. Silliman*, 167 F.2d 607, 610 (3rd Cir. 1948) (even without statute creating cause of action, "[t]he United States can sue those who commit tortious acts which result in pecuniary loss to the United States . . . ."). *Cf. United States v. Denver & Rio Grande Western R. Co.*, 547 F.2d 1101 (10th Cir. 1977).

In *United States v. Standard Oil Co.*, 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947), the Court refused to permit a Government suit for medical expenses and loss of services of a soldier hit by an oil truck. This holding, however, has been restricted to the facts of the case. In addition, the Court's rationale focussed on the primacy of the legislature in setting "fiscal" policy, *id.* at 314–16, 67 S.Ct. 1604, a concern not directly applicable to the instant case.

15. Appellees assert that a proceeding on the common law basis offered by the Government would subject them to liabilities without prior notice. We cannot find that officials lack notice of the common law obligations of fiduciary duty.

ery and fraud penalties . . . detracts in no way from the Government's right to a civil remedy of the kind available to private employers."[16] Thus we find the district court properly heard the present case under 28 U.S.C. § 1345 (1976).[17]

### III

The court below ruled that the facts alleged did not satisfy the common law standards for breach of fiduciary duty, because there was no demonstration that the Government suffered direct financial loss. We find that holding in error.[18]

■ Federal courts have often provided relief for the Government in civil actions charging its agents with abuse of office. The basic statement came in *United States v. Carter*, 217 U.S. 286, 306, 30 S.Ct. 515, 520, 54 L.Ed. 769 (1909):

> The larger interests of public justice will not tolerate, under any circumstances, that a public official shall retain any profit or advantage which he may realize through the acquirement of an interest in conflict with his fidelity as an agent. If he takes any gift, gratuity or benefit in violation of his duty, or acquires any interest adverse to his principal, without a full disclosure, it is a betrayal of his trust and a breach of confidence, and he must account to his principal for all he has received.

Federal precedent in this area, however, centers on arguably more obvious abuses of office than that alleged here. *Carter* involved a bid-rigging scheme, *Continental Management, Inc. v. United States* was a civil action following several criminal convictions for bribery,[19] and *United States v. Drumm*[20] concerned an agricultural inspector's employment as a consultant to one of the businesses he was supposed to police. Nevertheless, in appropriate circumstances we may look to State and other common law sources for guidance.[21] Based upon our examination of the sources, we believe that this complaint presents sufficient grounds for proceeding to the merits.

The Restatement on Restitution (1937), § 197 provides:

> Where a fiduciary in violation of his duty to the beneficiary receives or retains a bonus or commission or other profit, he holds what he receives upon a constructive trust for the beneficiary.

The application of this standard in *Fuchs v. Bidwill*,[22] an action for an accounting by state legislators, is instructive. The complaint alleged that the lawmakers purchased stock in a harness racing corporation for one dollar per share, and that the corporation's principal arranged to have the shares repurchased four years later for three dollars to seven dollars a share. Plaintiffs contended that the stock arrangements created a conflict of interest for the lawmakers, who influenced legislation concerning the racing industry. The court found that the allegations of the complaint were sufficient even though, as in the case of Kearns and Bostwick, there was no direct charge that defendants did anything in their official duties "which was contrary to

---

**16.** *Continental Management, Inc. v. United States*, 527 F.2d 613, 620, 208 Ct.Cl. 501 (1975).

**17.** Section 1345 provides:

Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.

**18.** Appellees also claim that the Government failed to comply with Rule 9(b)'s requirement that all allegations of fraud be pleaded with particularity. Fed.R.Civ.P. 9(b). Since this issue was not raised below, it is not properly before us. We note, however, that the claim of breach of fiduciary duty would not appear to be

a matter of fraud covered by the rule, and, further, that when a motion to dismiss under Rule 9(b) succeeds, the dismissal is ordinarily combined with leave to submit an amended complaint.

**19.** 527 F.2d 613 (Ct.Cl.1975).

**20.** 239 F.2d 109 (1st Cir. 1964).

**21.** *Clearfield Trust Co. v. United States, supra*, 318 U.S. at 367, 63 S.Ct. 573.

**22.** 31 Ill.App.3d 567, 334 N.E.2d 117 (1975), *rev'd on other grounds*, 65 Ill.2d 503, 3 Ill.Dec. 748, 359 N.E.2d 158 (1977).

the public interest, that there are, or were, wrongful acts."[23] Such charges were not necessary, the court stated, because "the rule defining the responsibilities of public officials is not based upon harm necessarily done but upon equitable principles of preventing a conflict of opposing interests in the minds of officials."[24]

█ *Carter* still provides the standard for breach of fiduciary duty by public officials:

It is immaterial . . . whether the complainant was able to show any specific abuse of discretion, or whether it was able to show that it had suffered any actual loss by fraud or otherwise.[25]

State and federal courts have adopted this position in subsequent cases,[26] and we see no basis for the district court's attempt to restrict this standard to the facts of the cases. Valid policy concerns underlie the insistence that a plaintiff in an action for breach of fiduciary duty need not demonstrate actual damage or abuse of office. As noted in *Carter*:

It is not enough for one occupying a confidential relation to another, who is shown to have secretly received a benefit from the opposite party, to say, "You cannot show any fraud, or you cannot show that you have sustained any loss by my conduct." Such an agent has the power to conceal his fraud and hide the injury done his principal.[27]

The purpose of the civil remedy is not to restore particular funds to the Government, but to provide a means of enforcing the loyalty of its agents. The action pursued here is a proper tool, based on common law notions of principal-agent relations, for controlling the possible loss of impartial public administration.

## IV

█ The Government need not prove actual damage if it can prove that Kearns and Bostwick received such an inflated price for their Siam Kraft stock that their performance of public duties might well have been infected by a conflict of loyalties. Appellees insist that the complaint must fail because it does not claim that the sale of Siam Kraft shares was "secret." It is true that conflict of interest must be undisclosed to constitute a breach of duty to the principal.[28] However, we find it a reasonable inference from the complaint that since Kearns's stock was in a blind trust, presumably insulated from his control, the transaction was secret. Similarly, the complaint states that Bostwick sold his stock "directly or through others," leaving the possibility that sale through third parties would satisfy the secrecy requirement. Of course, our view of the pleadings is subject to proof at trial.

Consequently, the judgment of the district court is reversed and the case is remanded for further proceedings in accordance with this opinion.

*Reversed.*

**23.** *Id.* at 121.

**24.** *Id.*

**25.** *United States v. Carter*, 217 U.S. 286, 305, 30 S.Ct. 515, 519, 54 L.Ed. 769 (1909).

**26.** Federal decisions include *United States v. Drumm, supra*, at 113; *Continental Management, Inc. v. United States, supra*, at 619; and *United States v. Bowen*, 290 F.2d 40, 44 (5th Cir. 1961). Among the state precedents are *Fuchs v. Bidwill, supra*, 334 N.E.2d at 121; *County of Cook v. Barrett*, 36 Ill.App.3d 623, 344 N.E.2d 540, 548 (1976); *Jersey City v. Hague*, 18 N.J. 584, 115 A.2d 8, 11–15 (1955); *Driscoll v. Burlington-Bristol Bridge Co.*, 8 N.J. 433, 86 A.2d 201, 222 (1952). In the leading English case in the area, *Reading v. Attorney General*, [1951] A.C. 507, the House of Lords adopted a similar rule. In the words of Lord Porter: "It is the receipt and possession of the money that matters, not the loss or prejudice to the master." *Id.* at 516.

**27.** *United States v. Carter, supra*, at 305–06, 30 S.Ct. at 520.

**28.** *E. g., id.* at 305, 30 S.Ct. at 520 (agent "who is shown to have secretly received a benefit"); *United States v. Drumm, supra*, at 113 ("defendant's dual employment was not made known to" employer). *United States v. Drisko*, 303 F.Supp. 858, 860 (E.D.Va.1969) (conflict of interest "without the knowledge of his principal").