UNITED STATES of America,
Plaintiff-Appellee,

v.

Joseph F. KENEALY, Anna M. Kenealy, Michael F. Kenealy, Manor Mortgage Co., Inc., and Kenco Realty Company, Defendants-Appellants.

Nos. 80–1275, 80–1276, 80–1277, 80–1278 and 80–1279.

United States Court of Appeals, First Circuit.

Argued Nov. 5, 1981.

Decided April 17, 1981.

Robert D. City, Boston, Mass., with whom Robert J. Owens Associates P. C., Boston, Mass., was on brief, for defendants-appellants in Case Nos. 80–1275, 80–1276, and 80–1278.

Charles J. O'Malley, Boston, Mass., for defendant-appellant in No. 80–1279.

William S. Freeman, Atty., Civil Division, Dept. of Justice, Washington, D. C., with whom Alice Daniel, Asst. Atty. Gen., Jane A. Restani, Mark H. Gallant, and Robert L. Ashbaugh, Attys., Civil Division, Dept. of Justice, Washington, D. C., were on brief, for plaintiff, appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

Joseph F. Kenealy was a real estate appraiser for the Federal Housing Administration (FHA) in Boston. He also engaged in outside real estate ventures with his wife Anna, his son Michael, and two family-owned corporations: Manor Mortgage Co., Inc., and Kenco Realty Company. The United States brought this civil action against the Kenealys and their two corporations for recovery of monetary benefits gained as a result of Joseph's outside business ventures allegedly conflicting with his fiduciary duties to the United States.

The five defendants appeal from the district court's grant of the United States' motion for summary judgment. They claim that the district court improperly used their involuntary admissions obtained by operation of Fed.R.Civ.Proc. 36 [1] and that material issues of fact remain as to whether Joseph in fact breached a duty to the government. They further argue that any conceivable breach of Joseph's duty was cured by his disclosure of his activities to the FHA. Additionally, Anna, Michael, Manor, and Kenco assert that Joseph's alleged breach of duty is insufficient to inculpate them. Finally appellants dispute the measure of damages. We affirm.

I

Joseph served as an FHA review appraiser in Boston from 1968 through 1970. He inspected and appraised houses intended for sale to low and moderate income purchasers in order to determine the maximum mortgage that the FHA would insure. He also reviewed and approved appraisals made by subordinate appraisers, modifying these appraisals as he thought appropriate.

The allegations sparking this suit are that Joseph, assisted by his family and their controlled corporations, purchased and sold for personal gain forty-one properties in Dorchester, Massachusetts during this three year period. Although the details of the various transactions differed to a degree, typically either Joseph's wife or son or one of his corporations would buy a property at an average price of about $8400 and would hold it for about ten months. During this period, the Boston FHA office in which Joseph worked would appraise the property. Joseph personally appraised or reviewed appraisals for nine of the forty-one FHA mortgage guarantees; the remainder were handled by other persons in his office. An FHA insured mortgage (at an average value of approximately $17,000) then would be obtained to finance the final sale (from the defendants to others) of the property at an average price of about $17,500. The result was that through inflated FHA insured mortgages and selling prices, which Joseph and others under his supervision had the power to influence, the five defendants realized an alleged $348,511.19 profit.

The history of these proceedings, relevant to the Rule 36 issue, is moribund and discreditable. This civil action, commenced in May of 1973, was stayed pending a criminal

1. RULE 36. Requests for Admission of Documents

"(a) Request for Admission. A party may serve upon any other party a written request for the admission ... of the truth of any matters....

"The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify his answer or deny only a part of the matter of which an admission is requested, he shall specify so much of it as is true and qualify or deny the remainder. An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless he states that he has made reasonable inquiry and that the information known or readily obtainable by him is insufficient to enable him to admit or deny. A party who considers that a matter of which an admission has been requested presents a genuine issue for trial may not, on that ground alone, object to the request; he may, subject to the provisions of Rule 37(c), deny the matter or set forth reasons why he cannot admit or deny it.

"The party who has requested the admissions may move to determine the sufficiency of the answers.... If the court determines that an answer does not comply with the requirements of this rule, it may order ... that the matter is admitted....

"(b) Effect of Admission. Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission...."

investigation till December, 1973. No answer being forthcoming for more than a year, a notice of default issued in early 1975. Defendants then moved, without explanation for their inaction, to have the default removed, and to dismiss the complaint for failure to state a claim. The latter motion was denied after counsel failed to appear at oral argument. Then followed, in June of 1975, a governmental request for admissions under Rule 36, another governmental motion for judgment of default in October of 1975, a defense motion to file answers late, a granting of this motion accompanied by a warning, a governmental motion in June of 1976 for summary judgment based on the unanswered 1975 request for admissions, a defense motion to be relieved of these admissions, and the granting of this motion.

Finally, in September of 1976, the defendants filed tardy responses to the government's requests for admissions. An excerpt reveals their flavor. Defendants were asked to admit the truth of the following statements relating to the property at 32 Rosseter Street:

"(a) On May 4, 1968 [Anna M. Kenealy], using the name Anna M. Hurley, purchased the property at 32 Rosseter Street from J. L. Hastings for $3,089.43.

"(b) On July 5, 1968, [Anna M. Kenealy] sold the property to Willie and Beulah Ellison for $12,900.

"(c) The sale was financed by a $7,900 FHA-insured mortgage from the Boston Five Cents Savings Bank.

"(d) [Joseph F. Kenealy] reviewed the property appraisal for FHA."

Defendants replied:

"31. a) Deny.

b) Deny.

c) Unable to admit or deny based upon information known or readily available.

d) Unable to admit or deny based upon information known or readily available." [2]

Over a year later the court denied the government's motion for summary judgment. Directed to stipulate uncontested facts, defendants repeatedly refused to stipulate to any facts beyond those set forth in their answers. In March of 1978 the government once again moved to deem admitted the matters set forth in its June 1975 request for admissions, arguing that defendants' answers were too vague and general and that defendants had refused to enter into a stipulation that would have facilitated resolution of the case. The defendants failed to oppose this motion. It was granted by the court. The government again moved for summary judgment. The defendants again were defaulted when they failed to appear at the hearing on this motion scheduled in January 1980. Once again the district court granted the defendants' motion to remove the default. The court rescheduled the hearing on the government's summary judgment motion, which it granted on March 31, 1980. Defendants appealed.

## II

Initially the defendants-appellants dispute the propriety of the district court's decision to attribute the weight that it did to the matters involuntarily admitted against them, pursuant to Rule 36.[3] They

2. In pointing to this illustration, the government in its brief before us comments:

"At the time defendants made these denials, they had available to them certified copies of deeds and mortgages which established and documented the subject transactions and copies of their own records which they had previously advised the court were necessary to fully respond."

3. Appellants also claimed that the district court misunderstood the proper standard for granting summary judgment. This they argue is demonstrated by the following statement by the court:

"The matter is now before the Court on the government's motion for summary judgment which is predicated primarily on the theory that defendants' involuntary admissions to the government's request, as established by the Court order of May 3, 1978, establish *by at least a preponderance of the evidence*, all of the material allegations of the government's complaint [emphasis added]."

This description, however, simply paraphrases the appellee's case rather than establishes what

do not—as they cannot—dispute that deeming matters admitted is a proper remedy under appropriate circumstances for intransigence during discovery. Rule 36 requires specificity, detailed explanation when a truthful answer cannot be framed, good faith, and fairness. Given appellants' opaque, generalized, and tardy denials, their failure to oppose the government's request for this relief, and their incredibly cavalier conduct in this litigation, we decline to tamper with the district court's action, which was well within its discretion.[4]

### III

Appellants contend that the district court erred in granting summary judgment because there remained a disputed factual issue as to "whether Kenealy inflated appraisals or caused appraisals to be inflated so that he or one of the other defendants profited." They admit that the involuntary admissions establish that Joseph "reviewed the property appraisal[s] for the FHA"—a matter that we note is "conclusively established" as to nine of the properties since the district court has not "on motion permit[ted] withdrawal or amendment of the admission." Fed.R.Civ.Proc. 36(b). Regarding the remaining property transactions, however, appellants object that the record indicates only that Joseph's duties included performing appraisals himself and reviewing and approving appraisals made by subordinate FHA appraisers, and that these transactions were appraised by unidentified persons in his Boston FHA office. Joseph's own affidavit avers that—as to the remaining transactions for which his involvement has not previously been "conclusively established"—he did not "exercise any influence or authority as to any official determination, judgment, decision or action

relating to [the] properties owned either directly or indirectly by" the appellants. Appellants thus argue that material fact issues remain unsettled since the record does not show that Joseph was involved in the remaining FHA evaluations.

■ We examine appellee's legal theory to determine what facts are material. The appellee argues, and appellants do not dispute, that federal "common law protections against breach of fiduciary duty extend to the principal-agent relationship" arising out of federal employment, *United States v. Kearns*, 595 F.2d 729, 732 (D.C.Cir.1978), and that statutes and regulations provide evidence of the precise nature of this fiduciary duty.[5] *See United States v. Podell*, 436 F.Supp. 1039, 1042 (S.D.N.Y.1977), *aff'd*, 572 F.2d 31 (2d Cir. 1978). The government further argues, and again the appellants do not dispute, that the following regulations were in force during the relevant period:

§ 0.735–204 Outside employment and other activity

"(a) An employee shall not engage in outside employment or other outside activity not compatible with the full and proper discharge of the duties and responsibilities of his Government employment. Incompatible activities include but are not limited to:

\* \* \* \* \* \*

"(4) Activities that establish relationships or property interests that *may* result in a conflict between his private interests and his official duties...." 24 C.F.R. § 0.735–204(a)(4) (1980) [emphasis added].

§ 0.735–205 Financial interests

"(a) An employee shall not:

(1) Have a direct or indirect financial interest that conflicts substantially,

---

the district court thought to be the proper standard for summary judgment. That the court apprehended the correct standard is evident from its ultimate ruling "that the government has sustained its burden of proving that facts alleged and its burden of demonstrating that there is no issue of material fact."

**4.** Appellants announce before us for the first time that two of the properties in the involun-

tary admissions do not exist at their listed addresses. Such information would be more appropriately directed to the district court. *See* Fed.R.Civ.Proc. 60(b) (relief from judgment or order for mistake, inadvertence, etc.).

**5.** In this case we need not decide whether this duty extends to areas not occupied by the regulations to which we will refer.

or *appears* to conflict substantially, with his Government duties and responsibilities." *Id.* at § 0.735–205(a)(1) (1980) [emphasis added].

■ These regulations by their terms proscribe apparent as well as actual conflicts of interest.[6] They are "thus directed not only at dishonor, but also at conduct that tempts dishonor." *United States v. Mississippi Valley Generating Co.*, 364 U.S. 520, 549, 81 S.Ct. 294, 308, 5 L.Ed.2d 268 (1961). Under these regulations, factual questions about the extent of Joseph's actual involvement in each particular transaction are not material so long as it is clear, as it is here, that the record establishes an apparent conflict of interest between Joseph's official duties and his outside activities.[7] Joseph thus is liable under this theory unless he has erected a successful defense—the matter to which we next turn.

### IV

Appellants complain that the district court mistakenly granted summary judgment since factual questions remain as to whether Joseph adequately disclosed his conflict of interest so as to avoid breaching his fiduciary duty. "It is true that conflict of interest must be undisclosed to constitute a breach of duty to the principal." *United States v. Kearns*, 595 F.2d at 734. Joseph's

affidavit asserts four "disclosures". First, his 1958 FHA employment application revealed that he "was engaged in the real estate business." Second, once he was hired, he told his immediate superior, Mr. Joseph Flaherty, Chief Appraiser, "of [his] outside business activities and was advised by [Mr. Flaherty] that [Joseph] could continue the same as long as it did not conflict with [Joseph's] duties and responsibilities as an FHA employee." Third, Joseph made his "outside business activities" known to the Chief Underwriter with the FHA and HUD, Mr. James Feeley, during the time period of the complaint. Finally, his "outside business activities were common knowledge to the entire office...."

These purported disclosures must be evaluated against the regulations that provide evidence of the extent of the fiduciary duty in this case. The lone applicable provision simply specifies that "deputy counselors ... may ... give authoritative advice and guidance to ... employees ... who seek advice and guidance on questions of conflict of interest...." 24 C.F.R. § 735.104(b) (1980).[8] The government argues that it has established beyond dispute that Joseph's conflicts of interest were never approved by a deputy counselor—the only person possessing clear actual authority to remedy

---

6. Appellant Joseph Kenealy in his reply brief argues that these regulations are inapplicable since the government failed to bring them to his attention as required by 24 C.F.R. § 0.735–103 (1980). However, Joseph's affidavit—the source that purportedly establishes that he was not notified—states only that he never was advised "that there were regulations that would permit my outside business activities *only upon a written request and a written approval*" [emphasis added]. We will not presume that the government violated its duty by failing to notify Joseph of the regulations quoted in the text—which do not concern "written request[s]" or "written approval[s]"—in the absence of some indication from the record to the contrary.

7. Thus we need not reach the government's alternative theory of liability premised upon Joseph's *actual participation* in government actions in which he had a financial interest. *See* 18 U.S.C. § 208(a).

8. A more specific disclosure regulation—requiring prior written approval for employees' *participation* in matters in which they have a conflict of interest—was promulgated on August 2, 1969. *See* 34 Fed.Reg. 12,625 (1969) (to be codified in 24 C.F.R. § 0.735–205(b)). This amendment was modified on March 17, 1970. *See* 35 Fed.Reg. 4622 (1970) (to be codified in 24 C.F.R. § 0.735–205(b)(2)). Only one of the nine transactions in which the present record conclusively establishes that Joseph *actually* participated was sold after any of these amendment dates: the property at 37 Dunlap Street. This property was purchased by appellant Kenco Realty in May 1969, transferred to a third party the following month, and sold under an FHA-insured mortgage in May 1970. The record does not disclose the date on which Joseph's actual participation in this matter ended. Lacking any clear indication from the present record that these amending regulations apply in this case, we do not speculate on their import.

conflict problems on behalf of the United States.[9]

■ The effect of "authoritative advice and guidance" to which 24 C.F.R. § 735–104(b) (1980) refers is not explicitly stated to immunize a possible conflict of interest so as to avoid future fiduciary liability. Nonetheless we think that requesting and receiving advice from a deputy counselor must satisfy an employee's fiduciary responsibility. Such a reading is the most reasonable construction of a regulatory provision describing that designated individuals' advice and guidance as "authoritative". *Cf. United States v. Mississippi Valley Generating Co.*, 364 U.S. at 561, 81 S.Ct. at 315 (no disclosure defense when no statute empowers superiors to exempt employees from conflict of interests).

■ Joseph's affidavit, however, describes conduct that does not comply with the regulation. "Advice and guidance" implies a need for official *response* from the relevant superior. Joseph's third and fourth asserted disclosures (the only ones that occurred during the relevant time period) at best only demonstrate his unilateral communication of his activities, even assuming that this communication was complete and directed to a deputy counselor. Because Joseph received no "authoritative advice and guidance", his asserted "disclosure" activities fail to satisfy 24 C.F.R. § 735–204(b)'s regulatory defense to his breach of fiduciary duty.[10] This is not splitting hairs; a disclosure deliberately responded to by an authorized superior may rationally support a conferring of immunity while a unilateral announcement may not.

V

■ Defendants Anna, Michael, Manor, and Kenco claim that the district court erred in holding them derivatively liable for Joseph's fiduciary breach. Anna and Michael concede that they can be held liable if they are shown to be knowing and active participants in Joseph's breach of his duty. Their participation is amply demonstrated on this record: Anna participated in eighteen of the transactions, while Michael took part in twelve. Joseph himself performed the FHA review appraisal in some of these transactions. Significantly, neither Anna nor Michael deny that this participation was knowing. Given Joseph's longtime employment as an FHA appraiser, the family relationship between these three, and the tangled and extensive history of property transaction among them (each involving Joseph's FHA office directly and some involving his own official action), this inference of knowing participation in an on-going family conspiracy in apparent breach of Joseph's fiduciary duty is strongly suggested. Although we are generally very reluctant to surmise states of mind at the stage of summary judgment, there is no requirement that compelling and *uncontroverted* inferences be ignored. *Hahn v. Sargent*, 523 F.2d 461, 468 (1st Cir. 1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54 (1976). Therefore we conclude that the district court correctly held Anna and Michael to be jointly and severally liable for the conspiracy's profits. *See Jackson v. Smith*, 254 U.S. 586, 589, 41 S.Ct. 200, 201, 65 L.Ed. 418 (1921) ("And others who knowingly join a fiduciary in [a breach of fiduciary duty] likewise become jointly and severally liable

---

**9.** The government relies on an affidavit from a Boston deputy counselor who commenced work there in 1970. This man swears Joseph never consulted him or created any official written record of prior approval. We need not examine this affidavit; Joseph's alone is sufficient to settle this issue.

**10.** We need not decide whether a more flexible federal common law disclosure defense in the nature of equitable estoppel coexists with this regulatory defense; the estoppel doctrine could not apply to this case in any event. *See Precious Metals Associates, Inc. v. Commodity Fu-*

*tures Trading Comm'n*, 620 F.2d 900, 908–09 (1st Cir. 1980) ("some question as to whether the doctrine of equitable estoppel can apply to the government at all and, if it can, under what circumstances", but issue not decided since facts offered no basis for doctrine). The nature and extent of Joseph's activities created in him an equitable duty of circumspection not satisfied by less than explicit assurance of propriety from appropriate superiors. *See id.* at 909. Joseph's "disclosures" never persisted to this point at a relevant time.

with him for such profits."); *Ferguson v. Omnimedia*, 469 F.2d 194, 197 (1st Cir. 1972) (participation in every act of the conspiracy not necessary for co-conspirator liability).

Derivative liability for the Kenealys' two family corporations is even more clear. Joseph was majority shareholder in both Manor and Kenco. All shareholders of the two corporations were Kenealy family members. All took some part in the transactions at issue, which were undertaken for corporate benefit. Obviously the corporations were simply instruments for the individual Kenealy activities. No matter what precise standard may govern more difficult cases, *see Developments in the Law—Corporate Crime: Regulating Corporate Behavior through Criminal Sanctions*, 92 Harv.L.Rev. 1227, 1246–58 (1979), the district court did not err in holding Manor and Kenco derivatively liable.

## VI

The district court granted summary judgment for the government in the amount of $348,511.19. This profit figure was calculated from the involuntary admissions by subtracting the purchase price of the properties from the price at which the appellants sold them. Appellants do not contest the accuracy of these calculations insofar as they represent a summation of the gross sales receipts minus purchase prices. Instead they point to one sentence in Joseph's affidavit that disputes the accuracy of this figure "in that said amount fails to consider capital expenditures, taxes and other related expenses incurred in the ownership and management of the" properties.

The appellants make no attempt to specify the amount of their asserted "other related expenses", although these data—if they exist—should be uniquely within appellants' control, and although they have had far more than sufficient time to assemble the relevant information. Rule 56(e) makes clear that parties opposing motions for summary judgment "may not rest upon the mere allegations or denials of [their] pleading" but rather "must set forth specif-

ic facts showing that there is a genuine issue for trial."

"The non-movant has affirmative duty to come forward to meet a properly supported motion for summary judgment: 'A party opposing a motion for summary judgment cannot make a secret of his evidence until trial, for in doing so he risks the possibility that there will be no trial. A summary judgment motion is intended to "smoke out" the facts so that the judge can decide if anything remains to be tried.'" *Walker v. Hoffman*, 583 F.2d 1073, 1075 (9th Cir. 1978) (per curiam), *cert. denied*, 439 U.S. 1127, 99 S.Ct. 1044, 59 L.Ed.2d 88 (1979) (quoting *Donnelly v. Guion*, 467 F.2d 290, 293 (2d Cir. 1972)).

After provoking the district court to warn them that future violations of procedural rules would not be tolerated, the appellants continued their style of litigation to the point of having Rule 36's severe sanctions applied against them. Against this background, we believe that Joseph's conclusory affidavit is insufficient to create a "genuine issue for trial."

*Affirmed.*