UNITED STATES of America, Plaintiff,

v.

The BOEING COMPANY, Melvyn R. Paisley, Thomas K. Jones, Herbert A. Reynolds, Harold Kitson, Jr., and Lawrence H. Crandon, Defendants.

Civ. A. No. 86–0829–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Feb. 17, 1987.

Henry E. Hudson, U.S. Atty., Dennis E. Szybala, Asst. U.S. Atty., Alexandria, Va., Gordon A. Jones, Joan E. Hartman, Ronald H. Clark, Dept. of Justice, Civ. Div., Washington, D.C., for plaintiff.

Robert S. Bennett, Dunnells, Duvall, Bennett & Porter, Benjamin S. Sharp, Perkins & Coie, Washington, D.C., Gerald F. Treanor, Jr., Venable, Baetjer, & Howard, McLean, Va., Philip Lacovara, Hughes, Hubbard & Reed, Washington, D.C., John A.C. Keith, Blankingship & Keith, Fairfax, Va., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HILTON, District Judge.

### Findings of Fact

1. The Boeing Company ("Boeing") is a corporation organized and existing under the laws of the State of Delaware. The corporate headquarters are located at 7755 East Marginal Way South, Seattle, Washington. Boeing maintains an office and conducts business within the geographical limits of the jurisdiction of this Court.

2. Defendant T.K. Jones ("Jones") is a resident of the State of Washington; Defendant Melvyn Paisley ("Paisley") is a resident of the Commonwealth of Virginia; Defendant Herbert A. Reynolds ("Reynolds") is a resident of the State of Washington; Defendant Harold Kitson, Jr. ("Kitson") is a resident of the State of Washington; Defendant Harold Crandon ("Crandon") is a resident of Brussels, Belgium.

3. Boeing traditionally has encouraged public service by its employees. Some forms of public service, such as service in state or local government, do not require a complete severance of the individual's employment relationship with Boeing. Boeing has made financial arrangements with its employees who accept positions in state and local government, such as paid leave, in an effort to diminish the personal economic incentives associated with public service.

4. Over the past twenty years, the Department of Defense has regularly solicited highly qualified employees from Boeing for government service. The government repeatedly has asked Boeing to assist it in identifying such qualified employees, and has specifically requested that Boeing encourage these employees to accept positions in the Federal government.

5. Boeing has a long-standing practice of making severance payments to individuals who terminate their employment with the Company in order to enter government service. In making these payments, Boeing has endeavored to encourage its employees to serve their government and provided a mechanism to completely sever all financial ties between Boeing and the departing employee.

6. During the period from 1962–1982, Boeing made at least twenty-one severance payments to individuals who terminated their employment with the Company in order to enter government service.

7. Boeing has repeatedly disclosed to the United States government, including responsible officials of the Department of Defense, the fact of these payments and the circumstances under which they are made. One such disclosure letter specifically noted that severance payments were calculated with reference to the differential between the financial benefits that would accrue to the employee if he remained with Boeing, as compared with those that would accrue to the employee if he accepted the anticipated government position.

8. Despite actual knowledge of Boeing's practice of making severance payments, the government has never objected to the practice, and on at least one occasion informed Boeing that a proposed severance payment was in compliance with the federal conflict of interest statutes.

9. During 1981 and 1982, each of the individual defendants was recruited from Boeing by the federal government for a position within the Department of Defense.

10. On or about May 19, 1981, Jones resigned from Boeing and, on or about June 1, 1981, he assumed the position of Deputy Under Secretary of Defense for Strategic and Theater Nuclear Forces.

11. On or about October 31, 1981, Paisley retired from Boeing. On December 2, 1981, following Senate confirmation, Paisley was sworn in as Assistant Secretary of the Navy for Research, Engineering and Systems. Paisley continues to serve in this position.

12. On or about July 22, 1981, Reynolds resigned from Boeing. On July 26, 1981, he became a consultant to the Defense Department and on October 4, 1981, received an appointment to the position of Deputy Director of Space and Intelligence Policy.

13. On March 5, 1982, Defendant Crandon resigned from Boeing. On or about March 8, 1982, he was appointed to the position of computer scientist with the North Atlantic Treaty Organization ("NATO") Air Command and Control Systems ("ACCS") Team in Brussels, Belgium. Crandon continues to serve in this position.

14. On August 1, 1982, Kitson retired from Boeing. Kitson served as a consultant to the Department of Defense from August 2, 1982, until September 1982, when he was appointed Deputy Assistant Secretary of the Navy for Command, Communications and Control Intelligence.

15. Boeing made severance payments to the five individual defendants on the following dates: T.K. Jones, May 19, 1981; Herbert R. Reynolds, July 22, 1981; Melvyn R. Paisley, October 1, 1981; Lawrence H. Crandon, March 5, 1982; and Harold Kitson, Jr., July 31, 1982.

16. At the time Boeing made and the individual defendants accepted the severance payments in question, the individuals were still employed by Boeing and had not yet entered into government service.

17. The severance payments made to the individual defendants were not contingent upon the individuals entering into federal government service, the position assumed in the federal government, the agency served in the federal government, their remaining in government service for any stated period of time, or their returning to Boeing at anytime in the future. Once the individual separated from the Company, the severance payment was his unconditionally, no matter what he did in the future.

18. At the time the individual defendants left Boeing, Boeing did not make any commitment to rehire them at any time in the future and the individuals made no commitment to return to Boeing. Although Boeing might have been willing ultimately to reemploy the individuals, it had no expectation that the individuals would return to the Company at the time that they terminated their employment.

19. The severance payments to these individual defendants were not made with the intent that the individuals would give Boeing preferential or other favorable treatment during the term of their government employment, and the payments were not understood by the individuals as such.

20. Staff personnel in the Industrial Relations Department performed calculations to arrive at a proposed severance payment for presentation to individuals within Boeing with final decision making authority. Those responsible for the ultimate decision were not aware of the specific calculation method followed by the Industrial Relations Staff, and approved severance payments to the individual defendants based on their determination that the proposed payment was reasonable and fair to the departing employee.

21. Boeing never asked the individual defendants to provide it with any preferential treatment or special advantages during their tenures with the government, and the individuals in fact never provided Boeing with any such preferential treatment or special advantage.

22. The severance payments made to the individual defendants were not intended by Boeing as a supplementation of their government salaries or as compensation for their government services. The individual defendants did not understand the severance payments to be compensation for their services to the government or a supplement to their government salaries.

23. The government supervisors of each of the individual defendants were and are fully satisfied that the individuals capably and honorably performed their public duties without bias and with independence and impartiality and have never engaged in or otherwise participated in a conflict of interest.

24. At no time has the Department of Defense taken any disciplinary or other adverse action against any of the individual defendants, although it has had actual knowledge of their previous employment by Boeing and their receipt of a severance payment from Boeing.

25. The severance payments were understood by the individual defendants to be partial compensation for the loss of benefits which they had earned as a result of their prior service with Boeing. They were informed by Boeing that the payment was a means of avoiding any possible conflict of interest by severing all financial connections with Boeing.

26. Before entering into government service, during the course of routine ethics reviews, Messrs. Jones and Paisley disclosed to attorneys in the Office of the General Counsel of the Department of Defense and the Navy, respectively, of the fact and amount of the severance payments which they received from Boeing. Jones also discussed his receipt of the Boeing severance payment with his government superiors, Under Secretary of Defense Dr. Richard DeLauer, and Dr. DeLauer's Executive Office, Colonel Kenneth Hollander.

Jones was assured that he could accept the anticipated severance payment.

27. Messrs. Jones, Reynolds, Kitson and Paisley disqualified themselves from working on any Boeing-related matters as of September 1982. The disqualifications applicable to Messrs. Jones, Reynolds and Kitson remained in effect for the balance of the period of their government service. Mr. Paisley resumed participation in a Boeing-related project on September 17, 1984, at the express direction of Secretary of the Navy, John Lehman. In his government position, Mr. Crandon has no direct procurement role, does not award contracts and does not make source selection decisions.

28. The amounts of the severance payments to the individual defendants were recorded in the overhead pools on the accounts of BAC. The account in which these payments were recorded is systematically and regularly monitored by auditors of the Defense Contract Audit Agency ("DCAA") of the Department of Defense, resident at the Boeing facility. Payments were recorded on the following dates: Jones, May 21, 1981; Reynolds, July 30, 1981; Paisley, October 8, 1981; Crandon, February 25, 1982; Kitson, July 29, 1982.

29. During the course of such routine monitoring of BAC's overhead costs, DCAA auditors noted the severance payments to Messrs. Jones, Reynolds and Paisley. During the period from November 1981 to January 1982, DCAA auditors requested information from Boeing about these payments. In response, Boeing informed the auditors of the Company's historical practices of making severance payments and the basis for the severance payments to these individuals, including specifically the factors considered in arriving at the payment amount.

30. As a result of this dialogue, as of mid-February 1982, the DCAA Resident Auditor at BAC, the DCAA Branch Manager of the Puget Sound Branch, and Director of the San Francisco Region of DCAA were aware of the following: that severance payments had been made to Messrs. Jones, Reynolds and Paisley; the amount of the payments; the government positions assumed by these individuals following their separation from Boeing; the factors now alleged by the government to have been considered by Boeing in arriving at the amount of the payment; and the method by which Boeing accounted for those payments pursuant to Armed Services Procurement Regulation 15–205.39.

31. Each year the government calculates a percentage of costs included in the overhead pools of contractors that the government anticipates or projects will ultimately be disallowed when the overhead claim is closed. This calculation of anticipated unallowable costs is expressed as a percentage of the total overhead pools, and is called the withhold rates. The government unilaterally establishes these withhold rates. Boeing applies the withhold rate to the overhead dollars to be billed on each contract, and the resultant dollars are withheld from periodic contract payments made by the government to Boeing.

32. The withhold rate is set annually and adjusted periodically during the course of the year at the discretion of the government's Administrative Contracting Officer. The withhold rate is set at a level intended to cover all potential unallowable costs. In the past, the application of the withhold rate has resulted in the government withholding monies in excess of Boeing Aerospace Company's total costs ultimately disallowed in every year.

33. In 1981, during the period in question, $7.8 million to $4.4 million was withheld. For 1982, $4.6 million to $3.9 million was withheld.

34. Overhead claims of Boeing Aerospace Company for the years 1981 and 1982 have not been finally settled to date. The withhold rates set by the government for those years are more than adequate to cover all costs which may ultimately be disallowed, including the severance payments paid by Boeing during those years. Moreover, even if the withhold rates established for 1981 and 1982 were not sufficient to cover all ultimately disallowed costs for

those years, that will not be known until the overhead claims for those years are finally settled.

35. On March 22, 1985, at the request of the Civil Division of the Department of Justice, Boeing executed an agreement tolling the three-year statute of limitations governing the government's tort claim against Boeing, set forth in 28 U.S.C. § 2415(b). The agreement, which was prospective only, contained an effective date of March 25, 1985.

36. The Plaintiff commenced this action on July 22, 1986.

### Conclusions of Law

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1345, and venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

The government contends it has a cause of action under the federal common law for breach of fiduciary duty created by 18 U.S.C. § 209 against both the recipients of a salary supplement for government services and against the payer of such a supplement. It also claims a cause of action against the individual defendants for breach of an implied contract. At trial the government elected to proceed against Boeing in tort for breach of fiduciary duty and against the individual defendants for breach of implied contract.

■ At the time that Boeing made and the individuals accepted the severance payments in question, the individuals had not yet entered into government service and were not employees of the United States government. For this reason, there was no principal-agent relationship between the individual defendants and the United States government at the time that Boeing made, and the individuals accepted, those payments. *See Restatement (Second) of Agency,* § 387 (1958).

Because they were not government employees, the individual defendants owed no fiduciary or other duty to the United States government at the time of the severance payments. *See id.* In accepting those pay-

ments, the individuals therefore breached no common law or other duty owed to the United States government, and Boeing did not induce or otherwise participate in any breach of fiduciary duty by the individual defendants.

■ Even assuming that the individual defendants owed a fiduciary duty to the United States government at the time of the severance payments in question, neither the making, acceptance or retention of those payments constituted or induced in any fashion a breach of that duty.

18 U.S.C. § 209(a) provides . . .

Whoever receives any salary, .or any contribution to or supplementation of salary, as compensation for his services as an officer or employee of the Executive Branch of the United States government, of any independent agency of the United States, or the District of Columbia, from any source other than the government of the United States, except as may be contributed out of the treasury of any state, county, or municipality; or

Whoever, whether an individual, partnership, association, corporation, or other organization pays, or makes any contribution to, or in any way supplements the salary of, any such officer or employee under circumstances which would make its receipt a violation of this subsection

Shall be fined not more than $5,000 or imprisoned not more than one year, or both.

■ 18 U.S.C. § 209 forbids the supplementation of salary and does not apply to the giving of a severance payment by a private employer to an employee who has not, at the time of receipt, entered into government service. Moreover, the acceptance of a severance payment by a non-government employee does not violate 18 U.S.C. § 209. *See* S.Rep. No. 2213, 87th Cong. 2d Sess. *reprinted in* 1962 Code Cong. & Ad. News 3852, 3863.

Even if 18 U.S.C. § 209 were read to apply to the defendants in this case, the Court concludes that that statutory section was not violated. Based on all the evi-

dence before the Court, including the testimony of the witnesses, the Court finds that the severance payments in question were not made by Boeing with the intention of supplementing the individual defendants' government salaries, nor were they intended as compensation for government services rendered by those individuals. Similarly, the severance payments were not accepted by the individual defendants as a supplementation to their government salaries or as compensation for their government services. The government contends that the use of salary loss as a method of computation necessarily has a prospective effect which equates to a salary supplementation. This ignores the fact that the use of salary figures and benefits are an accurate measure of past contributions to the company. Salaries are paid on the basis of length of service and level of performance. In any event the formula for calculation of severance pay cannot make the payment something other than severance pay. The payments made by Boeing were severance payments made to sever the relationship with these employees based on past performance and accumulated benefits. The payments therefore were not contrary to the standards of conduct established by Section 209. *See United States v. Muntain,* 610 F.2d 964 (D.C.Cir. 1969).

■ The defendants cannot be said to have violated the Department of Defense regulations codified in 32 C.F.R. Part 40 (1980). Those regulations by their express terms apply only to employees of the Department of Defense. Because the individual defendants were not employees of the United States government at the time they accepted the payments, they were not bound by those regulations, and their conduct was not prohibited by the regulations. For this reason, the Court concludes that severance payments, as made here, did not violate these regulations.

■ The defendants also did not violate standards of conduct established by common law principles of agency. In accordance with those principles, an agent may be held liable to his/her principal for receipt of undisclosed, secret profits which create a conflict of interest. *See Continental Management, Inc. v. United States,* 527 F.2d 613 (Ct.Cl.1975). The severance payments here at issue were timely disclosed to responsible agents of the United States government. The payments were not in the nature of "secret profits," and could not in any fashion tend to subvert the loyalty of the individual defendants to the United States government. *See also United States v. Carter,* 217 U.S. 286, 30 S.Ct. 515, 54 L.Ed. 769 (1910); *United States v. Kenealy,* 646 F.2d 699 (1st Cir.), *cert. denied,* 454 U.S. 941, 102 S.Ct. 478, 70 L.Ed.2d 250 (1981); *United States v. Kearns,* 595 F.2d 729 (D.C.Cir.1978).

These payments created neither the appearance of nor an actual conflict of interest. None of the individual defendants were in a position in the government to provide preferential treatment to Boeing and in fact none of the individual defendants rendered preferential treatment to Boeing while a government employee. Under these circumstances, neither the making nor the acceptance of the severance payments could be said to have created an actual or a potential conflict of interest, or a corresponding breach of the employees' duty of undivided loyalty.

The government was not injured by the making or acceptance of these payments. The severance payments were not made with the intent to secure preferential treatment for Boeing. The individuals never rendered preferential or other favorable treatment to Boeing during their respective periods of government service. Under these circumstances, the government cannot be said to have been injured by the challenged conduct. Having in fact suffered no harm, the government is not entitled to recover damages.[1] *See Continen-*

---

1. In any event, the government would not be entitled to recover damages twice—once from Boeing, and once again from the individual defendants. *See Continental Management, Inc. v. United States,* 527 F.2d at 619.

*tal Management, Inc. v. United States,* 527 F.2d at 619 n. 6.

 Moreover, the government is not entitled to recover interest on the amount of the severance payments for the period of time during which they were recorded by Boeing as an overhead cost. At the government's direction, Boeing has withheld from the amount of overhead costs billed to the government on government contracts an amount which is sufficient to cover the amount of the challenged payments. The government therefore has not paid to Boeing an amount representing these payments. Again, having suffered no injury, the government is not entitled to recover the damages which it here claims. Moreover, inasmuch as Boeing's overhead rates for 1981 and 1982 have not been finally negotiated, this claim by the government is not ripe, and would be justifiable, if at all, only before the Board of Contract Appeals or Claims Court.

 The defendant, Boeing, also raises as a defense the statute of limitations. The Court finds that the government's claims as to the first four of the questioned severance payments are barred by 28 U.S.C. § 2415(b). For purposes of computing the running of this statute of limitations period, the government's cause of action is deemed to have accrued on the date on which the severance payments were made. *See, e.g., United States v. Central Soya, Inc.,* 697 F.2d 165 (7th Cir.1982); *United States v. Limbs,* 524 F.2d 799 (9th Cir.1975); *Dameron v. Washington Magazine, Inc.,* 575 F.Supp. 1575 (D.C.D.C.1983).

The severance payments to Messrs. Jones, Reynolds, Paisley and Crandon were each made more than three years prior to the March 25, 1985 effective date of the statute of limitations tolling agreement executed by Boeing on March 22, 1985. The government actually knew, or with the exercise of reasonable diligence could have known, all the facts underlying its cause of action as to the payments to Messrs. Jones, Reynolds, Paisley and Crandon, more than three years prior to March 25, 1985. Accordingly, the government's claim for dam-

ages against Boeing as to these individuals arising from these payments is time barred.

For reasons set forth above, judgment on all counts will be entered for the defendants.

An appropriate order shall issue.