**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**The BOEING COMPANY, INC.; Melvyn R. Paisley; Thomas K. Jones; Herbert Reynolds; Harold J. Kitson; Lawrence H. Crandon, Defendants–Appellees.**

**No. 87–2054.**

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 3, 1987.

Decided May 5, 1988.

Michael F. Hertz, Civil Div., Dept. of Justice (Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Henry E. Hudson, U.S. Atty., Alexandria, Va., Joan E. Hartman, Civil Div., Dept. of Justice, Washington, D.C., on brief), for plaintiff-appellant.

Philip Allen Lacovara (Roger P. Fendrich, Andrew T. Karron, Hughes, Hubbard & Reed, on brief), Robert S. Bennett (Alan Kriegel, Dunnells, Duvall, Bennett & Porter, Benjamin S. Sharp, Hilary Harp, Per-

kins Coie, Washington, D.C., Gerard F. Treanor, Jr., Arlington, Va., Amy S. Berman, Venable, Baetjer & Howard, Washington, D.C., on brief), for defendants-appellees.

Before HALL and ERVIN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

ERVIN, Circuit Judge:

In 1981 and 1982, five Boeing Company ("Boeing") employees left the company to assume high-level positions in the Reagan administration. Before their federal employment began, Boeing made a large "severance payment" to each one with the payments totalling $485,000. In 1986, the government instituted this civil action to recover the amount of the payments from both Boeing and the individual employees based on 18 U.S.C. § 209(a),[1] a conflict of interest statute. At trial, the district court found for defendants. *United States v. Boeing Co.*, 653 F.Supp. 1381 (E.D.Va. 1987). The government appeals. We affirm in part and reverse in part.

## I. The Facts

During 1981 and 1982, the federal government recruited the five individual defendants for positions in the Department of Defense (DOD) or NATO. Boeing encouraged the men to accept the positions and gave each a significant severance payment upon their termination from Boeing. The details of the payments are as follows.

(1) Thomas K. Jones became Deputy Under Secretary of Defense for Strategic and Theater Nuclear Forces on June 1, 1981. He received $132,000 from Boeing on May 19, 1981.

(2) Herbert A. Reynolds became a Defense Department consultant on July 26, 1981, and Deputy Director of Space and Intelligence Policy on October 4, 1981. He received $80,000 from Boeing on July 22, 1981.

(3) Melvyn R. Paisley became Assistant Secretary of the Navy for Research, Engineering and Systems on December 2, 1981. He received $183,000 from Boeing on October 1, 1981.

(4) Lawrence H. Crandon became a computer scientist for the NATO Air Command and Control Systems Team on March 8, 1982. He received $40,000 from Boeing on March 5, 1982.

(5) Harold Kitson became a Defense Department consultant on August 2, 1982, and Deputy Assistant Secretary of the Navy for Command, Communications and Control Intelligence in September, 1982. He received $50,000 from Boeing on July 31, 1982.

While T.A. Wilson, Boeing's chairman and chief executive officer, determined the actual amount of each payment, lower level employees and the departing employees made preliminary calculations based on the financial impact of moving from Boeing to the government. Calculation factors included salary and benefit differentials, higher living costs, moving expenses, and the expected length of government service. A separate payment not at issue here cashed out the employees' interests in existing benefits. Boeing made a total of twenty-one such severance payments between 1962 and 1982 to encourage government service and sever all financial ties between Boeing and the departing employees. Employees entering government service at the state and local levels were al-

---

1.    § 209. Salary of Government officials and employees payable only by United States

(a) Whoever receives any salary, or any contribution to or supplementation of salary, as compensation for his services as an officer or employee of the executive branch of the United States Government, or any independent agency of the United States, or of the District of Columbia, from any source other than the Government of the United States, except as may be contributed out of the treasury of any State, county, or municipality; or

Whoever, whether an individual, partnership, association, corporation, or other organization pays, or makes any contribution to, or in any way supplements the salary of, any such officer or employee under circumstances which would make its receipt a violation of this subsection—

Shall be fined not more than $5,000 or imprisoned not more than one year, or both.

lowed to go on paid leave instead of resigning.

The existence and the amount of the payments were disclosed initially in Financial Disclosure Reports filed by each individual. In late 1981, employees of the Defense Contract Audit Agency (DCAA) became aware of the nature of the payments. Boeing sought to include the payments in overhead calculations, in effect charging the government for them. Later, Boeing agreed not to include them in overhead. On March 22, 1982, the DCAA notified the DOD contracting officer for Boeing of the payments and their nature. The matter was referred to the Justice Department on July 14, 1982. After an unexplained delay of nearly three years, the Justice Department and Boeing executed an agreement tolling the statute of limitations on March 25, 1985. The government filed this action on July 22, 1986.

In a bench trial, the district court found for the defendants reasoning that: (1) severance payments made prior to government employment do not violate the standards of § 209; (2) subjective intent is required to violate § 209, and no intent was shown; (3) because the payments were disclosed, they did not violate common law agency principles which prohibit only secret, undisclosed profits; (4) the payments created neither the appearance of nor an actual conflict of interest; and (5) the three year statute of limitations, 28 U.S.C. § 2415(b), bars the claims against Boeing for the first four payments.

The issues on appeal are whether § 209 applies to severance payments made prior to government service, whether § 209 includes an intent element, whether § 209 includes an injury element, and the statute of limitations.

## II. 18 U.S.C. § 209

This is a case of first impression in which the government seeks to apply the standards of § 209 in a civil action to recover severance payments made before five individuals began their government employment. Section 209(a) provides, in relevant part:

Whoever receives any salary, or any contribution to or supplemention of salary, as compensation for his services as an officer or employee of the executive branch of the United States Government ... from any source other than the Government of the United States ...; or

Whoever ... pays, or makes any contribution to, or in any way supplements the salary of, any such officer or employee under circumstances which would make its receipt a violation of this subsection—

Shall be fined not more than $5,000 or imprisoned not more than one year, or both.

Although the conflict of interest statutes, including § 209, are criminal in nature, civil remedies exist based on the fiduciary duty owed by federal employees. *See United States v. Kenealy,* 646 F.2d 699, 703 (1st Cir.), *cert. denied,* 454 U.S. 941, 102 S.Ct. 478, 70 L.Ed.2d 250 (1981); *United States v. Kearns,* 595 F.2d 729, 733 (D.C.Cir.1978); *Continental Management, Inc. v. United States,* 527 F.2d 613, 617, 208 Ct.Cl. 501 (1975). That duty is defined by the statutory standard of conduct. *Kenealy,* 646 F.2d at 703; *Continental Management,* 527 F.2d at 617, 620. Therefore, the government has a civil cause of action based on the statutory standards of § 209.

### A. Preemployment Severance Payments

Section 209 prohibits outside "contribution to or supplementation of salary, as compensation for his services as an officer or employee" of the United States. On its face, this does not require that payment occur while the party was a government employee. The district court, however, read § 209 to require payment during government employment. *Boeing,* 653 F.Supp. at 1386; *see also United States v. Raborn,* 575 F.2d 688 (9th Cir.1978) (in dicta, stating that status as an employee is an element of a violation of § 209). Because the statutory language is ambiguous, we turn to the legislative history of § 209.

Prior to 1962, § 209 was codified at 18 U.S.C. § 1914, and provided "[w]hoever, being a Government official or employee, receives any salary in connection with his services...." In 1962, Congress eliminated the phrase "being a Government official or employee," a phrase which did require employment status at the time of payment. This change indicates that payment need not occur during federal employment; a preemployment payment to supplement salary could also violate § 209.

The policy behind § 209 and the conflict of interest laws in general also support a broad interpretation of its coverage. The statutes are

> directed at an evil which endangers the very fabric of a democratic society, for a democracy is effective only if the people have faith in those who govern, and that faith is bound to be shattered when high officials and their appointees engage in activities which arouse suspicions of malfeasance and corruption. The seriousness of this evil quite naturally led Congress to adopt a statute whose breadth would be sufficient to cope with the evil.

*United States v. Mississippi Valley Generating Co.*, 364 U.S. 520, 562, 81 S.Ct. 294, 315, 5 L.Ed.2d 268 (1961). Congress has established rigid rules of conduct to ensure that this faith is maintained. *Id.* at 551, 81 S.Ct. at 310; *Kenealy*, 646 F.2d at 703; *Continental Management*, 527 F.2d at 620. Large severance payments by defense contractors to those going to work at high levels in the Defense Department certainly "arouse suspicions," and those suspicions are not reduced by making the payments just before government service begins.

Therefore, we conclude that payments made prior to the onset of federal service can violate § 209. Employment status at the time of payment is not an element of a violation. All preemployment payments do not necessarily run afoul of § 209, so we must still determine whether these payments were made to supplement salaries "as compensation for ... services as an officer or employee of the United States."

## B. Intent

The government argues that the conflict of interest statutes, including § 209, set forth an objective standard of conduct which does not include an intent requirement. This ignores the language of § 209, that payments must be made "as compensation for" services as a government employee. The district court found that neither Boeing nor the individual defendants intended the payments to be compensation for their government services.

The court's finding was based largely on statements by the individual defendants and others at Boeing that the payments were not made with that intent. Other evidence in the record contradicts these statements. First, the payments were calculated in large part based on the financial impact of moving from Boeing to the government. The individual defendants and other Boeing employees calculated salary, benefits and cost-of-living differences over the expected term of government employment. The chairman, who decided the ultimate amount, received a recommendation and was aware of the factors used to reach that figure. Second, Boeing's stated purpose in making the payments was to encourage public service by lessening the financial penalties involved in accepting government employment. These financial penalties include lower salary and benefits, so the payments were advance supplements to ease the pain of transition. Third, the parallel practice of providing paid leave for state and local service suggests that payments to federal employees were designed to do the same thing without technically violating § 209. Finally, the fact that in twenty-five years only twenty-one such payments were made, and only to those entering high level government service similarly suggests an intent to supplement the federal salaries of a limited number of employees. Viewing all of the evidence, we find that the five payments here were made with compensatory intent, and that the trial court's finding of no such intent was clearly erroneous.

## C. Injury

■ The defendants vigorously argue that the government was not injured by the payments because there was neither the appearance of nor an actual conflict of interest. Testimony as to their exemplary work records and the absence of complaints within DOD was offered to prove that no injury occurred. This ignores the preventive nature of the conflict of interest laws, that the appearance of conflicts rather than actual conflicts or corruption is all that is necessary. *See Mississippi Valley*, 364 U.S. at 549, 561–62, 81 S.Ct. at 315; *Kearns*, 595 F.2d at 734; *Continental Management*, 527 F.2d at 618. The appearance of large payments by a defense contractor to key Defense Department employees is enough; there is no need to show an actual conflict, much less actual corruption. The knowledge and approval of superiors does not alleviate the situation. *Mississippi Valley*, 364 U.S. at 561, 81 S.Ct. at 315.

■ Similarly, the defendants argue that their disclosure of the payments negates any injury because under the common law, only secret profits present a conflict. *See Kenealy*, 646 F.2d at 704–05; *Kearns*, 595 F.2d at 734. This action, however, is based on a violation of the standards of § 209, which is not limited to secret compensation. Even if secrecy or nondisclosure was an element here, effective disclosure must be formal, complete, and directed to the proper parties. *Kenealy*, 646 F.2d at 705. Here, the disclosures were statements of total income from Boeing, combining salary and the severance payments in one figure, reported on financial disclosure forms. Blanket disclosures that fail to differentiate ordinary and extraordinary payments are not sufficiently complete to insulate the payments from the conflict of interest laws.

To summarize, we hold that payments made to future federal employees before they begin government service can violate § 209, if they are made with compensatory intent. Injury in the form of corruption or an actual conflict of interest is not required; the appearance of a conflict is sufficient to violate § 209. Specifically, we find the severance payments by Boeing to the individual defendants were made with the intent to compensate for government service and created the appearance of a conflict of interest. Therefore, they violated § 209, and, absent other considerations, the government is entitled to recover the amount of the payments from either Boeing or the individuals.

## III. The Statute of Limitations

### A. Boeing

■ The claim against Boeing is based in tort for the inducement of a breach of duty by the individual defendants and for making payments in violation of § 209. A three year statute of limitations applies under 28 U.S.C. § 2415(b).[2] Boeing executed an agreement tolling the limitations period on March 25, 1985. Therefore, the critical date is three years before that date, March 25, 1982, and the inquiry becomes did the cause of action against Boeing accrue before that date.

The cause of action accrued at the time the tort was committed, here being the date of payment. Four of the five payments occurred before March 25, 1982. The statute of limitations bars the government's claim for those four payments absent something tolling the limitations period. That something, argues the government, is 28 U.S.C. § 2416(c),[3] which excludes from the limitations period any peri-

---

2. 28 U.S.C. § 2415(b) provides, in relevant part:

   Subject to the provisions of section 2416 of this title, and except as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon a tort shall be barred unless the complaint is filed within three years after the right of action first accrues ...

3. § 2416. Time for commencing actions brought by the United States—Exclusions. For the purpose of computing the limitations periods established in section 2415, there shall be excluded all periods during which—

   * * * *

   (c) facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances;

od during which the material facts are not and reasonably could not have been known by a government official charged with the responsibility to act.

That official, according to the Justice Department, was the DOD contracting officer for Boeing who learned the relevant facts in a memo from the DCAA on March 26, 1982. The government fails to explain, however, why DCAA employees charged with auditing responsibilities were not charged with the responsibility to act here. Conclusory statements that the contracting officer was the first official with the knowledge and ability to recognize a conflict do not justify tolling the statute under § 2416(c) and are refuted by the fact that DCAA employees and managers recognized that a problem existed. The decision to refer that problem to the contracting officer does not diminish their ability to act. Therefore, we find that the statute of limitations was not tolled under § 2416(c), and that four of the five claims against Boeing are time-barred. Only the claim based on the final payment to defendant Kitson on July 31, 1982, falls within the limitations period.

### B. The Individual Defendants

■ The individual defendants were not parties to the tolling agreement of March 25, 1985, so the relevant date for claims against them is July 22, 1986, the date the government filed this action. Clearly, any three year limitations period had expired by then for all five payments. However, violation of § 209 constitutes a breach of the duty of loyalty, and is contractual in nature. *See Jankowitz v. United States*, 533 F.2d 538, 548, 209 Ct.Cl. 489 (1976); Restatement (Second) of Agency, §§ 401 comment a, 403 comment a. Therefore, the six year statute of limitations in 28 U.S.C. § 2415(a)[4] applies. The payments all occurred after July 22, 1980, so none of the claims against the individual defendants is barred.

---

4. 28 U.S.C. § 2415(a) provides, in relevant part:
   (a) Subject to the provisions of section 2416 of this title, and except as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact,

### IV. Conclusion

We hold that the severance payments made by Boeing in this case violated 18 U.S.C. § 209. The government has a civil cause of action for the amount of each payment against both Boeing and the recipient of that payment, although double recovery by the government is not permitted. The three year statute of limitations in 28 U.S.C. 2415(b), however, bars the government's claims against Boeing for four of the five payments; only its claim based on the Kitson payment survives. The claims against the individual defendants are not time barred. Therefore, the decision below is

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

HALL, Circuit Judge, concurring in part and dissenting in part:

I concur in that part of the majority's opinion finding that four of the five claims against Boeing are barred by the applicable three-year statute of limitations, 28 U.S.C. § 2415(b). I also agree that a six-year limitation period applies to the breach of the duty of loyalty claims against the individual defendants. I cannot join that part of the majority's decision, however, finding that the five payments here were made with compensatory intent. In my view, the district court's judgment should be affirmed in all respects.

Section 209(a) provides, in relevant part, that "[w]hoever receives any salary, or any contribution to or supplementation of salary, as compensation for his services ..." shall be guilty of a misdemeanor. This language clearly contemplates that, for a payment to violate § 209(a), it must both supplement the employee's salary and also be intended as compensation for the employee's services as an officer or employee of the government. It is evident, there-

shall be barred unless the complaint is filed within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later: ...

fore, that Congress did not intend that payments were to be proscribed by 209(a) if they were made without culpable intent.

In this case, the district court found that these severance payments were not intended, either by Boeing or the employees, as compensation for their government service. Intent is a factual determination purely within the province of the district court. Here, after hearing substantial testimony and weighing the credibility of numerous witnesses,[1] the district court found as a matter of fact that "[t]he severance payments made to the individual defendants were not intended by Boeing as a supplementation of their government salaries or as compensation for their government services." I simply cannot agree with the majority's conclusion that the district court's findings were clearly erroneous.

In reaching its decision, the majority attaches great weight to the fact that Boeing relied in part upon the disparity between what the employees were earning at Boeing and what their anticipated government salaries would be, in calculating the amount of the severance payments. The majority quite correctly found that the severance payments tended to lessen the financial pain experienced by these employees in accepting government service. The majority inexplicably concludes, however, that since these severance payments were supplements, they must have been made with compensatory intent. Thus, the majority fails to articulate a distinction between payments intended as compensation and those which are not. Although the distinction is a fine one, it is clearly a distinction which Congress intended to make in enacting § 209(a).

The severance payments made here were in accordance with a policy followed by Boeing for over twenty years as a matter of good corporate citizenship. As the Secretary of the Navy articulated at trial, the purpose of the payments was to release the employees from their "golden handcuffs," or unvested benefits, as well as sever all financial ties between the employees and the company. Although there is evidence that these severance payments were calculated with the employees' prospective salaries in mind, the district court found that "[t]hose responsible for the ultimate decision were not aware of the specific calculation method," but approved the payments based upon what was determined to be "reasonable and fair to the departing employee[s]."

The majority minimizes the fact that the government, not Boeing, initiated the efforts to recruit these employees for government service. It is also undisputed that, after accepting government employment, these employees neither were in a position to provide, nor did they in fact provide, preferential treatment to Boeing. In sum, in enacting § 209(a), Congress recognized that a balance must be struck in order to encourage private industry's best minds to enter the public sector. By its holding today, this Court has tipped that balance and advanced a much more restrictive policy than Congress ever intended. For the foregoing reasons, I respectfully dissent.

---

1. The district court heard testimony from John F. Lehman, Secretary of the Navy, Melvyn Paisley, T.K. Jones and Harold Kitson, Jr.; and had before it the depositions of Charles P. Hogberg,

H.K. Hebeler, T.A. Wilson, S.M. Little, Jr., Mark K. Miller, T.K. Jones, Melvyn Paisley, Harold Kitson, Jr., Lawrence H. Crandon; as well as the deposition of the United States.