**UNITED STATES of America, Plaintiff,**

v.

**James L. MOORE, Defendant.**

**Civ. A. No. 90–1320–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

May 9, 1991.

As Revised June 24, 1991.

Henry E. Hudson, U.S. Atty., E.D.Va., Larry Lee Gregg, Asst. U.S. Atty., Michael F. Hertz, Stephen D. Altman, Mark D. Polston, Attys., Civ. Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Jonathan C. Thacher, Thacher & Swiger, Fairfax, Va., for defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

In this civil action, the government sues defendant, a former Navy employee, to recover $100,000 that defendant received from a private company as an illegal supplement to his federal salary. In the related criminal proceeding, defendant pled guilty to receiving an illegal salary supplement in connection with misusing his federal position. Thus, the government takes the position that defendant is collaterally estopped from relitigating both his receipt of an illicit salary supplement and the $100,000 amount of that supplement. Defendant, for his part, seeks dismissal of this action on several grounds, including the claim that a release of civil liability was part of the consideration for the guilty plea.

Now before the Court on defendant's dismissal motion and the government's cross-motion for summary judgment, the Court concludes, for the reasons recorded here, (1) that defendant's grounds for dismissal are meritless, (2) that defendant's guilty plea estops him from denying liability in this civil proceeding, and (3) that summary judgment as to damages is inappropriate because defendant is not estopped by his plea to dispute what portion

of the $100,000 constituted an illicit salary supplement.

## I

From January 1, 1983 through September 13, 1986, defendant James L. Moore was a civilian employee of the Department of the Navy, Naval Sea Systems Command (NAVSEA) in Arlington, Virginia. Defendant worked as an assistant engineer at the Submarine Monitoring Maintenance and Support Office and was an expert in circuit breaker electrical contacts and related components. During the same period, defendant owned a 49% interest in Electro Mech of Virginia (EMV), a Virginia corporation that manufactured circuit breakers, electrical contacts, and related components and had contracts with the Navy to provide these products. Defendant did not reveal his interest in EMV to the Navy and admits that he received $100,000 in dividends from EMV during the period of his federal employment.

On December 29, 1987, defendant pled guilty to a criminal information charging him with violating 18 U.S.C. § 209(a) by knowingly receiving a supplement to his federal salary. In the plea agreement, defendant stated that he had "no significant dispute" with the facts recited in the criminal information. Included in these facts were statements to the effect that defendant used his position at NAVSEA to help EMV receive several contracts from the Navy. Also included was the statement that defendant received $100,000 in dividends from EMV "paid in part to supplement Moore's salary for his work at NAVSEA."

On September 26, 1990, the government filed this two-count civil complaint against defendant. Count I, the subject of the government's motion for summary judgment, alleges that defendant breached his fiduciary duty of loyalty to the Navy by accepting a supplement to his government salary, thereby violating the standards of conduct embodied in 18 U.S.C. § 209(a).[1] Count II alleges that the same conduct constitutes a violation of the standards embodied in 18 U.S.C. § 208.[2] In both counts, the government seeks to recover the $100,000 EMV paid to defendant.[3]

## II

Defendant's Motion to Dismiss advances four arguments. They are meritless. First, defendant claims that this civil suit is a plea agreement violation. In support, he relies on paragraph five of the agreement, which states in part:

The United States Attorney's Office for the Eastern District of Virginia agrees not to seek or bring additional charges against the defendant based upon the facts set forth in the attached Statement of Facts.

This language, he argues, reflects that the government's release of the civil claim was part of the consideration for his plea. This argument fails; the language cannot bear the weight defendant wishes to place on it. This was a conventional plea agreement. The term "charges" clearly refers to criminal charges, and cannot reasonably be read to encompass civil claims. *See* Black's Law Dictionary (5th ed. 1979) (defining "charge," when used in criminal law, as an "accusation of a crime by a formal complaint, information or indictment"). Had

---

1. Section 209(a) provides in pertinent part: Whoever receives any salary, or any contribution to or supplementation of salary, as compensation for his services as an officer or employee of the executive branch of the United States Government, or any independent agency of the United States, or of the District of Columbia, from any source other than the Government of the United States, except as may be contributed out of the treasury of any State, county or municipality ... Shall be subject to the penalties set forth in section 216 of this title.

2. Section 208 provides criminal penalties for certain federal employees who make decisions or take actions affecting a personal financial interest.

3. The government's memoranda refer to unspecified proceeds in addition to the $100,000 in payments. The nature and precise amount of the additional proceeds are immaterial to the issues decided here.

the parties intended a release of civil claims, the agreement should, and easily could have referred specifically, to civil causes of action.[4]

■ Defendant next argues that Count I is a tort action, and is therefore barred by 28 U.S.C. § 2415(b), which establishes a three-year statute of limitations applicable to tort actions brought by the United States. This is incorrect. The Fourth Circuit has squarely held that a "violation of [18 U.S.C.] § 209 constitutes a breach of the duty of loyalty, and is contractual in nature." *United States v. Boeing Co., Inc.*, 845 F.2d 476, 482 (4th Cir.1988) (citing *Jankowitz v. United States*, 533 F.2d 538, 548, 209 Ct.Cl. 489 (1976) and Restatement (Second) of Agency §§ 401, 403), *rev'd on other grounds, Crandon v. United States*, 494 U.S. 152, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990). Thus, the applicable statute of limitations is 28 U.S.C. § 2415(a), which provides a six-year limitations period. *See Boeing*, 845 F.2d at 482. This action is therefore timely.[5]

■ Defendant's third argument is that the complaint fails to state a claim on which relief may be granted because the government alleges no injury and fails to demonstrate a nexus between any damage and the $100,000 sought. This contention is frivolous. In *Boeing*, the Fourth Circuit made clear that a civil cause of action exists under § 209 and that it requires no proof of an actual conflict of interest or corruption. *See* 845 F.2d at 479; *see also Crandon*, 110 S.Ct. at 1005 ("Congress appropriately enacts prophylactic rules that are intended to prevent even the appearance of wrongdoing and that may apply to conduct that has caused no actual injury to the United States. Section 209(a) is such a rule."). The appearance of a conflict of interest is sufficient to violate § 209; accordingly, any payments made with the intent to compensate for government service may be recovered. *See Boeing*, 845 F.2d at 479; *see generally United States v. Carter*, 217 U.S. 286, 305, 30 S.Ct. 515, 519, 54 L.Ed. 769 (1910) (under common law of agency, principal need not show actual loss because agent has power to conceal any injury done; agent must therefore account for any benefit received in violation of his duty).

Finally, defendant argues that Count II fails to state a cause of action and is barred by the plea agreement and 28 U.S.C. § 2415(b). Whether a violation of 18 U.S.C. § 208 can serve as a predicate for a civil damage action by the government on the facts presented here is a novel and unsettled question that the Court need not resolve in light of the grant of partial summary judgment on Count I and the government's concession that both counts seek the same recovery. Worth noting, however, is that defendant offers no reason why the analysis of the plea agreement and statute of limitations with respect to Count

---

**4.** Beyond this, it is also doubtful whether the Assistant United States Attorney who prosecuted defendant had authority to compromise defendant's civil liability. *See* 28 C.F.R. § 0.45 (1987); Civil Division Directive No. 163–86, *printed at* 28 C.F.R. Appendix Subpart Y (1988). It is axiomatic that "[t]he Government cannot be estopped by the action of its agent when that agent acts without authority or contrary to law." *United States v. Vonderau*, 837 F.2d 1540, 1541 (11th Cir.1988). It is also established that the government, unlike a private litigant who may be bound by the actions of an agent acting with apparent authority, is bound only by an agent acting with actual authority. *See Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947); *United States v. Killough*, 848 F.2d 1523 (11th Cir.1988); *United States v. Willis*, 164 F.2d 453 (4th Cir.1947); *United States v. Kates*, 419 F.Supp. 846 (E.D.Pa. 1976).

**5.** 28 U.S.C. § 2415(a) incorporates the tolling provision of 28 U.S.C. § 2416, which in turn provides that for purposes of computing the limitations periods established in § 2415, all periods are excluded during which facts material to the right of action are not known, and reasonably could not be known by the government. 28 U.S.C. § 2416(c). The government commenced this action on September 26, 1990. The record further reflects that September 27, 1984 was the first date on which anyone in the federal government became aware of any facts suggesting defendant's illegal conduct, namely his financial interest in EMV. Apart from the unsupported assertion that the government's legal theory sounds in tort, defendant offers no facts or arguments to contest the government's reasoning or account of events.

I would not apply with equal force to refute his arguments on Count II. More importantly, defendant offers no reason in principle why, if the government may bring a civil action under § 209 based on the fiduciary duties of federal employees, it may not also seek to apply the standards of § 208 civilly to recover the illicit payments. Like § 209, the essence of § 208 is conflict of interest and the resulting breach of a duty of loyalty. Accordingly, where, as here, the government alleges a § 208 violation stemming from payments to a government employee from a related entity, the government should be entitled to recover those payments in a civil action. Analogous authority supports this result. *Cf. United States v. Mississippi Valley Generating Co.*, 364 U.S. 520, 81 S.Ct. 294, 5 L.Ed.2d 268 (1961) (in action by corporation against government for breach of contract, government representative's violation of § 434 [now § 208] rendered contract unenforceable; government was not limited to remedy of criminal prosecution and could disaffirm contract without establishing financial loss); *K & R Engineering Co., Inc. v. United States*, 616 F.2d 469, 222 Ct.Cl. 340 (1980) (government entitled to recover amount paid to contractor under contracts procured as a result of federal employee's violation of § 208, and no criminal conviction is necessary before enforcement of a contract tainted by conflict of interest may be denied). In any event, the Court leaves for another day the question whether a violation of § 208 can serve as a proper predicate for a civil damage action.

### III

 The government has moved for summary judgment on Count I of the complaint. The essence of the government's position is that collateral estoppel stemming from the guilty plea precludes defendant from relitigating whether he breached his fiduciary duty of loyalty to the Navy. This argument is convincing. To begin with, it is well-established that "[t]he doctrine of collateral estoppel may apply to issues litigated in a criminal case which a party seeks to relitigate in a subsequent civil proceeding." *United States v. Wight*, 819 F.2d 485, 487 (4th Cir.1987) (citing *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534 (1951)), *modified*, 839 F.2d 193 (4th Cir.1988). It is also well established that the prior litigation may be in the form of a plea agreement. *See Wight*, 819 F.2d at 487 (citing *United States v. Dibona*, 614 F.Supp. 40, 41–43 (E.D.Pa.1984)); *see also United States v. Killough*, 848 F.2d 1523, 1528 (11th Cir.1988); *United States v. Podell*, 572 F.2d 31, 35 (2d Cir.1978). In this case, defendant specifically pled guilty to the criminal information charging him with receiving a supplement to his federal salary. In making this plea, defendant explicitly acknowledged that he received money from EMV, that this money was intended, at least in part, to supplement his federal salary, and that the other facts set forth in the criminal information were true.[6]

Controlling authority compels the conclusion that defendant's admissions in the criminal case establish his breach of fiduciary duty. In *Boeing*, the Fourth Circuit held that conduct violative of 18 U.S.C. § 209(a) also constitutes a violation of the employee's fiduciary duty of loyalty to the government. The court stated:

Although the conflict of interest statutes, including [18 U.S.C.] § 209, are

---

**6.** In addition to the statement in the plea agreement that defendant "had no significant dispute" with the facts set forth in the criminal information, defendant also had the following plea colloquy with the Court on the day he pled:

THE COURT: Along with this plea agreement has been handed to me a statement of facts. Have you reviewed this statement of facts?
DEFENDANT MOORE: Yes, sir.

\* \* \* \* \* \*

THE COURT: Do you disagree in any particular with this statement of facts?

DEFENDANT MOORE: No, sir.

\* \* \* \* \* \*

THE COURT: Is what this statement of facts says happened in fact what did happen?
DEFENDANT MOORE: Yes, sir.
Plea hearing Transcript at 8.

criminal in nature, civil remedies exist based on the fiduciary duty owed by federal employees.... That duty is defined by the statutory standard of conduct.... Therefore, the government has a civil cause of action based on the statutory standards of § 209.

*Id.* at 479 (citations omitted). Consequently, where, as here, a defendant admits to a violation of § 209(a), he is collaterally estopped from denying his liability in the government's civil suit. *See United States v. Wight,* 819 F.2d at 487.

Distilled to their essence, defendant's memoranda offer three substantive responses pertinent to liability: 1) material facts with respect to the plea agreement remain in dispute; 2) additional disputed issues demonstrate that the government has not established a breach of fiduciary duty; and 3) a judgment for the government would constitute a violation of the Double Jeopardy Clause.[7] None is persuasive.

To begin with, whatever subjective understanding defendant may have of his plea agreement, he cannot dispute that he pled guilty to violating § 209. In so pleading, he has admitted to accepting at least some money as a supplement to his federal salary. This establishes a *per se* breach of his duty of loyalty to his federal employer. Given this, defendant's claimed issues of fact, such as the degree of his influence over particular government contracts or whether his conduct amounted to fraud against the government, are irrelevant to his liability for breach of a fiduciary duty or duty of loyalty. Under *Wight,* defendant is bound by the admissions in his plea. Moreover, as noted, the parties' intent in entering into the plea agreement is irrelevant because the agreement is unambiguous. *See APCO v. Greater Lynchburg Transit Co.,* 236 Va. 292, 374 S.E.2d 10

(1988) (contract language is to be taken in its ordinary signification, and if, when so read, the meaning is plain, the instrument must be given effect accordingly); *Ross v. Craw,* 231 Va. 206, 343 S.E.2d 312, 316 (1986) (a contract is not deemed ambiguous merely because the parties disagree as to the meaning of the language they used to express their agreement).

■ Defendant's third argument is that the $100,000 sought is so disproportionate to the harm suffered by the government as to constitute a double jeopardy violation, citing *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). That case involved the False Claims Act, 31 U.S.C. §§ 3729–3731, which, at the time, provided that the government could seek double damages as well as a $2,000 penalty for each false claim or act upon which liability was predicated. The government sued Halper for $2,000 on each of 65 false claims, as well as for twice the amount of the government's actual damage of $585. Halper was thus exposed to more than $130,000 in penalties for a $585 fraud, all of which occurred after he had been sentenced to two years of imprisonment and a $5,000 fine. Believing that the request for $130,000 was punitive under the circumstances, the Supreme Court held that "under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution." *Id.* 109 S.Ct. at 1902.

*Halper* is inapposite in several respects. First, *Halper* involved a civil claim for liquidated penalties. By contrast, the government's cause of action under § 209 is based on the breach of fiduciary duty. The

---

7. Defendant also invites the Court to strike the government's memorandum in opposition to defendant's motion to dismiss and in support of the government's cross-motion for summary judgment because it was filed one day after the Court-ordered deadline and received by defendant two days after that deadline. The Court declines this invitation. Counsel for the government represents that the memorandum was in fact completed before the deadline but delivered late due to a clerical error in the mail room. There is no evidence that bad faith contributed in any way to the minor delay. Nor has defendant suffered prejudice from the delay; he had ample time in which to respond, and in fact was granted an extension of time from December 19, 1990 to January 7, 1991 by the parties' joint motion.

government's remedy—the forfeiture of illicit gain—is fairly characterized as remedial, not as a penalty, because it serves as a surrogate for actual damages that may have been incurred but are too difficult to ascertain. *Cf. United States v. Carter,* 217 U.S. at 305, 30 S.Ct. at 519 (suggesting that measure of recovery in accounting action by government against employee who received secret profits from contracts under his supervision was the profit received rather than damage incurred because an agent may conceal his fraud and hide the injury done to the government). Additionally, in *Halper* the Supreme Court explained that the rule there announced was intended for "the rare case ... where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused." *Id.* Again, the instant case is in sharp contrast, as it involves neither a fixed-penalty provision nor a prolific offender. Moreover, in *Boeing* the Fourth Circuit explained that the damage caused by a § 209 breach is the appearance of a conflict of interest. Consequently, any payment received in violation of the statute, no matter how large, is by definition not disproportionate to the harm caused.

## IV

■ The government also contends that summary judgment is appropriate with respect to the amount of damages. Specifically, the government claims that because defendant admits he received $100,000 in dividends from EMV, the government is now entitled to recover that amount. In response, defendant notes that the criminal information states only that the dividends were "paid in part" to supplement his salary. From this language, he argues that he should not be collaterally estopped to show that some portion of the $100,000 was compensation for his work on EMV projects during non-government time such as nights, weekends, and holidays. Defendant therefore suggests that a disputed issue of fact exists concerning how much of the $100,000 served as a supplement to his federal salary.

Defendant's argument is persuasive. As explained above, in *Boeing* the Fourth Circuit held that a federal employee's § 209 fiduciary duty is defined by the statutory standard of conduct, which specifies the receipt of any "salary, or any contribution to or supplementation of salary, as compensation for ... services as an officer or employee" of the executive branch or an independent federal agency. Judge Ervin, for the panel, further explained that prohibited payments must be made with compensatory intent, i.e. "as compensation for" services as a government employee. *See* 845 F.2d at 480–81; *see also United States v. Muntain,* 610 F.2d 964, 969–70 (D.C.Cir. 1979) (violation of § 209 requires contribution received as compensation for services rendered as government employee). To justify summary judgment for $100,000, the government must therefore show that the full amount was paid with compensatory intent.

The government's reliance on collateral estoppel and agency principles is unavailing. *Wight* dooms the government's collateral estoppel argument. There, the Fourth Circuit considered the collateral estoppel effect of a federal employee's plea of guilty to accepting gratuities, in violation of 18 U.S.C. § 201(g), on the government's subsequent civil action to recover the employee's illicit profits. In general terms, the court held (i) that the defendant was collaterally estopped from denying his liability, but (ii) the district court erred in extending collateral estoppel to damages. More particularly, the court held that collateral estoppel did not apply to damages because the amount on which the district court granted summary judgment was not an essential part of the defendant's plea agreement in the criminal case. *See* 819 F.2d at 487 (quoting *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979)). The crux of the court's reasoning was that the criminal statute there in issue, 18 U.S.C. § 201(g), contained no minimum required amount for a conviction. *See id.* at 488 (citing *Moore v. United States,* 360 F.2d 353 (4th Cir.1965), *cert. denied,* 385 U.S.

1001, 87 S.Ct. 704, 17 L.Ed.2d 541 (1967)). The court emphasized that "[i]n our view, the fact that Wight accepted some remuneration for his smuggling activities was the only fact essential to his conviction under § 201(g)." *Id.*

This case bears a close resemblance to *Wight.* Both stem from the government's pursuit of a civil remedy against a federal employee who pled guilty to receiving illicit payments. More importantly, the relevant criminal statute in this case, § 209(a), is similar in essential respects to § 201, the statute in *Wight.* Both contain no required minimum amount for conviction. Section 209 speaks of "any salary" and "any contribution to or supplementation of salary." Accordingly, the only fact essential to this defendant's guilty plea in the criminal case was his receipt of some amount of money as a supplement to his federal salary. Given *Wight,* defendant is not collaterally estopped from challenging the amount of damages owed to the government. And, contrary to the government's suggestion, neither the fact that defendant did not dispute the $100,000 figure in the criminal information, nor his acknowledgement in the plea agreement that he was subject to a fine of $100,000 provides a basis for applying collateral estoppel. Neither fact was essential to the plea agreement. Therefore, the government cannot rely on collateral estoppel to show that the entire $100,000 was received in violation of § 209.

■ In addition to collateral estoppel, the government cites authority in support of the general proposition that when an agent of the United States breaches his fiduciary duty by receiving payments from an outside source, the government is entitled to recover those payments. *See United States v. Carter; United States v. Kearns,* 595 F.2d 729, 733 (D.C.Cir.1978)

(employee holds payments in constructive trust for principal); *United States v. Drumm,* 329 F.2d 109 (1st Cir.1964). The common law principles embodied by these decisions are valid in certain contexts, but neither apposite nor dispositive here. This is an action based on § 209. In these circumstances, as *Boeing* teaches, the elements of the cause of action are defined by the statute. *See* 845 F.2d at 479; *see also United States v. Kenealy,* 646 F.2d 699, 703 (1st. Cir.) (statutes and regulations "provide evidence of the precise nature" of the fiduciary duty arising out of federal employment), *cert. denied,* 454 U.S. 941, 102 S.Ct. 478, 70 L.Ed.2d 250 (1981); *Continental Management, Inc. v. United States,* 527 F.2d 613, 617, 208 Ct.Cl. 501 (1975) ("violation of a statutory standard of conduct should normally meet with civil sanctions designed to effectuate the purpose of the statute infringed"). Common law principles of agency cannot be invoked to modify or avoid the statutory requirements. As the Supreme Court put it in the *Boeing* appeal, "it is *at least* clear that the Government must prove a violation of § 209(a) to prevail in these [civil] cases." *Crandon,* 110 S.Ct. at 1001 (emphasis added). Taken together with the Fourth Circuit's emphasis on compensatory intent in *Boeing,* this comment points persuasively to the conclusion that the government must show, at a minimum, that the payments sought to be recovered were made with intent to compensate a defendant for services as a government employee. Accordingly, the government may not rely on either collateral estoppel or general common law agency principles to obtain summary judgment for the full $100,000. Defendant is entitled to a trial on damages, at which the government will have to prove, by a preponderance of the evidence,[8] what share

---

**8.** More particularly, the government bears the burden of establishing a *prima facie* case as to an amount it contends defendant received in violation of 18 U.S.C. § 209. Once the government establishes a *prima facie* case as to an amount, the burden of going forward shifts to defendant to produce evidence rebutting this amount or establishing deductions from it. *See Wight,* 819 F.2d at 489 ("The burden, of course, was upon Wight to show the amount of ex-

penses he was entitled to deduct [from the illicit payments received] "); *cf. Rosenak v. Poller,* 290 F.2d 748, 750 (D.C.Cir.1961) (in action for an accounting, "the burden of establishing the nonexistence of money due to the plaintiff" shifts to the defendant "once facts giving rise to a duty to account have been alleged and admitted"). But the ultimate burden of persuasion by a preponderance of the evidence remains on the government.

of the $100,000 was made "as compensation for ... services as an officer or employee of the United States." 18 U.S.C. § 209(a).